IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | | |
|---|---|---|
| JAMES P. TEMBLOR, | ) | CV. NO. 07-00429 DAE-BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| FRANK LOPEZ; THOMAS READ; | ) | |
| EDWIN SHIMODA; NOLAN | ) | |
| ESPINDA; F. CAPPY CAMINOS; | ) | |
| and NETTIE SIMMONS, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANTS THOMAS READ AND NETTIE
SIMMONS' MOTION FOR SUMMARY JUDGMENT

On August 4, 2008, the Court heard Defendants' motion.  Brian M.C.

Pang, Esq., appeared at the hearing on behalf of Plaintiff; Kendall J. Moser and

John Molay, Deputy Attorneys General, appeared at the hearing on behalf of

Defendants.  After reviewing the motion and the supporting and opposing

memoranda, the Court GRANTS Defendants Thomas Read and Nettie Simmons'

Motion for Summary Judgment (the "Motion") (Doc. # 57).

BACKGROUND

On May 22, 1989, Plaintiff was convicted of robbery in the second degree in the First Circuit Court of the State of Hawai`i and sentenced to five years probation (the "1989 conviction").  On April 29, 1996, Plaintiff's probation was revoked and he was re-sentenced to a term of ten years in prison for the 1989 conviction, with credit for time served.[1]

In 2000, Plaintiff was paroled.  While out on parole, Plaintiff was charged with the offense of abuse of a household member.  On June 19, 2002, the Hawai`i Paroling Authority ("HPA") revoked Plaintiff's parole for the balance of the sentence in the 1989 conviction, set Plaintiff's maximum term of incarceration date for April 20, 2006, and recommended that Plaintiff participate in a substance abuse treatment program.

---

[1] The parties have again failed to explain the basis for the revocation of probation and why it occurred in 1996, which is more than five years after Plaintiff's conviction.

On July 1, 2002, Plaintiff pled guilty[2] to the abuse of a household member charge and was sentenced to six months imprisonment by Judge Steven Alm (the "2002 conviction").  The July 1, 2002 written Final Judgment and Sentence of the Court (the "2002 Judgment") has two separate boxes for how the sentence could be executed: one for "concurrent" and one for "consecutive." Neither box was checked.  The 2002 Judgment, however, provided that mittimus shall issue forthwith and that the sentence be executed immediately.

At the time of sentencing for the 2002 conviction, Plaintiff was in the custody of the State serving his sentence for the 1989 conviction.  Plaintiff did not receive a copy of the 2002 Judgment.  On November 13, 2003, Plaintiff was released on parole to Victory Ohana, which is a drug treatment center.[3]

---

[2] From the record before this Court, it appears Plaintiff pled guilty pursuant to a plea agreement offered by the State prosecutor and initially presented by a Deputy Public Defender ("DPD").  The offer was for six months imprisonment to run concurrently with Plaintiff's sentence for the 1989 conviction.  Plaintiff was technically pro se at the time of his change of plea, however, as the DPD realized between presenting the deal to Plaintiff and the actual change of plea that his office represented the complaining witness in the abuse of a family member case.  The record also appears to indicate, as Plaintiff suggests, that Judge Alm accepted the plea agreement.  (See generally Transcript of July 1, 2002 Change of Plea ("July 2002 Transcript"), Ex. 1 at 2-9, attached to Pl's. Mot. in Opp.)  Defendants contend that there was no plea deal.

[3] Plaintiff alleges that his parole to Victory Ohana indicates that he had served at least some of the time for the misdemeanor 2002 conviction.  Defendants
(continued...)

On February 3, 2006, Defendant Nettie Simmons, a Litigation

Coordination Specialist with the Department of Public Safety ("DPS") whose

responsibilities include, among others, sentence computation, reviewed Plaintiff's

file in preparing an Offender Management Review and Audit ("OMRA") and

determined that the sentence for the 2002 conviction was to run consecutively to

the 1989 conviction.  Simmons based this determination on Hawai`i Revised

Statutes ("HRS") § 706-668.5(1), which reads:

> If multiple terms of imprisonment are imposed on a
> defendant at the same time, or if a term of imprisonment
> is imposed on a defendant who is already subject to an
> unexpired term of imprisonment, the terms may run
> concurrently or consecutively.  Multiple terms of
> imprisonment imposed at the same time run concurrently
> unless the court orders or the statute mandates that the
> terms run consecutively.  <u>Multiple terms of imprisonment
> imposed at different times run consecutively unless the
> court orders that the terms run concurrently</u>.

(emphasis added).  Plaintiff's release date was re-set for September 8, 2006.

On April 19, 2006, Plaintiff learned that he was not being released on

his original release date of April 20, 2006, and instead was being transferred to

Oahu Community Correctional Center ("OCCC")  to serve the sentence in the 2002

conviction.  Upon his arrival at OCCC, Plaintiff complained to prison staff that he

---

[3](...continued)
aver that Plaintiff's release to the drug treatment center was in error.

was being improperly detained.  Plaintiff also complained to the Public Defenders Office.  In response to Plaintiff's inquiry, DPS employee Marlene Aken, whose responsibilities include the calculation of sentences for inmates, told Plaintiff that she would call the court to determine whether or not his complaint was legitimate. Aken also informed Plaintiff that he would be able to call his attorney once he was in the housing unit.

Aken called the court that same day to verify the legitimacy of Plaintiff's complaint.  Later, Aken made a follow-up call to the court.  Aken informed Plaintiff that while his complaint was being investigated and until OCCC received an amended order, he would remain incarcerated.   Court staff informed Aken that Plaintiff's case file would be retrieved from storage in order for Judge Alm to review it.

In addition to these steps, Simmons re-reviewed Plaintiff's file and confirmed her earlier calculation that Plaintiff's sentences should run consecutively and, as a result, Plaintiff was not eligible for release on April 20, 2006.  Simmons communicated this information to her supervisor Defendant Thomas Read,  an Offender Management Program Administrator whose duties include overseeing computation of sentences for DPS.

On May 17, 2006, Judge Alm issued an amended Final Judgment and Sentence of the Court (the "Amended Judgment"), which stated that the six-month sentence for 2002 conviction was to run concurrently with other sentences that Plaintiff was serving as of July 1, 2002.  Plaintiff was released from OCCC on May 17, 2006, the same day that the Amended Judgment was issued.

On August 9, 2007, Plaintiff filed his Complaint, which he subsequently amended on October 29, 2007, and again on February 29, 2008 (the "Second Amended Complaint" or "SAC") (Doc. #33).  In the SAC, Plaintiff alleges that, by pleading guilty to the abuse of a household member charge in 2002, he understood that he would be sentenced to a term of six months imprisonment, to be served concurrently with the remainder of his term for the 1989 conviction and the violation of that parole.  Plaintiff claims that since the sentence in his 2002 conviction was effective immediately and mittimus was to be issued forthwith, his six-month term of imprisonment for that charge was complete on January 1, 2003 and, therefore, the max-out date of April 20, 2006, imposed for the 1989 conviction was still in effect.   As a result, Plaintiff argues that he was over-detained for 27 days from April 21, 2006 to May 17, 2006 and asserts the following causes of action: (1) violation of 42 U.S.C. § 1983 under the Eighth

6

Amendment; (2) violation of 42 U.S.C. § 1983 under the Due Process Clause of

the Fourteenth Amendment; (3) false imprisonment; and (4) negligence.

On January 28, 2008, this Court issued an Order Granting in Part and

Denying in Part Defendants' Motion to Dismiss for Failure to State a Claim upon

which Relief May Be Granted and to Decline to Exercise Supplemental

Jurisdiction ("January 28 Order") (Doc. # 31).  The January 28 Order dismissed all

claims for monetary damages against Defendants in their official capacities but

otherwise denied Defendants' motion to dismiss.  On April 18, 2008, the parties

stipulated to the dismissal of Defendants Frank Lopez, Edwin Shimoda, Nolan

Espinada, and F. Cappy Campos (Doc. # 51).  Remaining Defendants Simmons

and Read (hereinafter "Defendants") filed the instant Motion on May 29, 2008.  On

June 27, 2008, Plaintiff opposed the Motion (Doc. #63), to which Defendants

replied on July 9, 2008  (Doc. #64).

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the

pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R.

Civ. P. 56(c); see also Porter v. Cal. Dep't of Corrections, 419 F.3d 885, 891 (9th

Cir. 2005); <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000).  A

main purpose of summary judgment is to dispose of factually unsupported claims

and defenses.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).

 Summary judgment must be granted against a party that fails to

demonstrate facts to establish what will be an essential element at trial.  <u>See</u> <u>id.</u> at

323.  A moving party without the ultimate burden of persuasion at trial has both

the initial burden of production and the ultimate burden of persuasion on a motion

for summary judgment.  <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d

1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to

identify for the court those "portions of the materials on file that it believes

demonstrate the absence of any genuine issue of material fact."  <u>T.W. Elec. Serv.,

Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (citing

<u>Celotex Corp.</u>, 477 U.S. at 323).

 Once the moving party has carried its burden under Rule 56, the

nonmoving party "must set forth specific facts showing that there is a genuine

issue for trial" and may not rely on the mere allegations in the pleadings.  <u>Porter</u>,

419 F.3d  at 891 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256

(1986)).  In setting forth "specific facts," the nonmoving party may not meet its

burden on a summary judgment motion by making general references to evidence

without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id.  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

## DISCUSSION

Defendants argue that summary judgment is warranted here because: (1) Plaintiff has not alleged a violation of any right protected by the Constitution; (2) Defendants are entitled to qualified immunity because even if Defendants erroneously construed the 2002 conviction as requiring the sentences to run consecutively, reasonable correctional workers in their position would have believed their conduct was lawful and comported with the requirements of the Constitution; and (3) upon learning of Plaintiff's complaints, a proper investigation was undertaken to determine whether the complaints were valid.

## I. Plaintiff's § 1983 Claims

Defendants principal argument with respect to Plaintiff's § 1983 claims is that Plaintiff has not articulated a specific federal constitutional right that Defendants allegedly violated.  Instead, Defendants argue, Plaintiff has only alleged a violation of his right to have his sentence calculated in a manner favorable to him rather than in accord with HRS § 706-668.5(1).  As there is no federal constitutional right to have a prison sentence calculated in any particular manner, Plaintiff's claim fails at an analytically early stage of the inquiry, thus obviating the need for an inquiry into the applicability of qualified immunity because § 1983 is not concerned with mere violations of state law.  Defendants

10

further contend that Plaintiff's allegations involve the improper application of State law, specifically HRS § 706-668.5(1), and, therefore, do not raise a cognizable federal claim.[4]  The Court disagrees.

      "To establish that a state official is personally liable in an action under 42 U.S.C. § 1983, a plaintiff must show that the official, acting under color of state law, caused the deprivation of a federal right." Spoklie v. Montana, 411 F.3d 1051, 1060 (9th Cir. 2005) (internal quotations and citation omitted).  Here, Defendants concede that they were acting under color of state law.  Therefore, the only issue is whether Plaintiff has alleged a violation of a federally protected right.  Defendants argue that Supreme Court precedent dictates that this Court should not merely assume a violation of Plaintiff's constitutional rights.  See Siegert v. Gilley, 500 U.S. 226 (1991) (holding that a former government employee did not make out a violation of any clearly established constitutional right and, thus, failed to satisfy necessary threshold inquiry in determination of qualified immunity claim).  Instead, this Court is required to determine if the actions of Defendants violated a

---

    [4] Defendants also argue that Haygood v. Younger, 769 F.2d 1350 (9th Cir. 1979), and Alexander v. Perrill, 916 F.2d 1392 (9th Cir. 1990), are distinguishable from the instant case and do not support a § 1983 claim.  Defendants raised this identical argument in their November 8, 2007 motion to dismiss.  In the January 28 Order, the Court rejected this argument and finds no compelling reason to change its position now.  For a more thorough discussion of this issue, please refer to pages 13 through 15 of the January 28 Order.

specific right guaranteed by the Constitution, as opposed to a "high-level abstract right, such as the freedom from improper incarceration."  (Defs.' Mot. at 7 (citing Anderson v. Creighton, 483 U.S. 635 (1987).)

The right to be free from improper incarceration is not in any way "abstract" but is, instead, a fundamental right implicit in the conception of liberty that runs throughout the Constitution.  See, e.g., U.S. CONST. pmbl. ("We the People of the United States, in Order to form a more perfect Union, establish Justice, insure domestic Tranquility, . . . and secure the Blessings of Liberty to ourselves and our Posterity. . . ."); U.S. CONST. amend. V ("No person shall be . . . deprived of life, liberty, or property without due process of law . . . ."); U.S. CONST. amend. XIV ("nor shall any State deprive any person of life, liberty or property without due process of law . . . .").  The Supreme Court has also specifically recognized the impact of improper incarceration on an individual's liberty interest, stating that "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."  Foucha v. Louisiana, 504 U.S. 71, 80 (1992).[5]

---

[5] While the Court is surprised that it must provide support for the proposition that the Constitution protects the right to be free from improper incarceration, it is compelled to do so in light of Defendants' argument here.  This argument is especially curious considering that the Court previously rejected it in the January

(continued...)

As this Court stated in its January 28 Order, although there is no federal right to have sentences run concurrently, Plaintiff has identified two federal rights implicated by his alleged over-detention: (1) his Eighth Amendment right to be free from cruel and unusual punishment; and (2) his Fourteenth Amendment right to due process because he was not afforded an opportunity to be heard when Defendants moved his release date beyond April 20, 2006.  Both of these rights have been explicitly recognized by the Ninth Circuit as being implicated by over-detention.[6]

With respect to Plaintiff's Eighth Amendment claim, the Ninth Circuit has held that "[d]etention beyond the termination of a sentence could constitute cruel and unusual punishment if it is the result of deliberate indifference to the prisoner's liberty interest[.]"  Haygood, 769 F.2d at 1354 (citations and internal quotation marks omitted).  As to Plaintiff's Fourteenth Amendment claim, although that Amendment does not guarantee a particular method of calculating prison sentences, where the state creates a statutory right to release from prison, it

_____

[5](...continued)
28 Order.

[6] The Court only summarizes the relevant portions of the January 28 Order here.  For a more thorough discussion of these issues and the cases supporting them, please refer to pages 8 through 12 of the January 28 Order.

13

"creates a liberty interest and must follow minimum due process appropriate to the circumstances to ensure that liberty is not arbitrarily abrogated." <u>Id.</u> at 1355.  It is clear that Plaintiff's claims premised upon the Eighth and Fourteenth Amendments allege the violation of specific liberty interests protected by the Constitution.

Defendants' contention that Plaintiff's § 1983 claims present issues of Hawai`i law, not federal civil rights law, is similarly unavailing.  Essentially, Defendants claim that, because the determination of how sentences imposed at different times is controlled by HRS § 706-668.5(1), this is a matter for the Hawai`i courts.  As no Hawai`i court has ruled on the issue of whether this statute was incorrectly applied to the calculation of Plaintiff's sentence, this Court should not rule on the issue.  On the contrary, the Court finds that the relevant question is not whether Plaintiff's sentences were properly computed in accordance with State law but, rather, whether the calculation and execution of Plaintiff's sentences impinged upon his established, constitutionally-protected liberty interests.  Simply put, this case presents questions of federal law and Defendants' arguments to the contrary are unpersuasive.

Accordingly, the Court DENIES the Motion with respect to Defendants' first argument.

II.  <u>Qualified Immunity</u>

Defendants argue that they are entitled to qualified immunity because, based on the facts available to them at the time, they had no reason to believe that their actions violated any federal civil right of Plaintiff.  Plaintiff responds that qualified immunity is inapplicable because his detention beyond the termination of his sentence was the result of deliberate indifference and, as a result, constituted cruel and unusual punishment in violation of the Eighth Amendment. Furthermore, Plaintiff argues that qualified immunity cannot lie because the failure of Defendants to timely notify Plaintiff of his re-calculated release date violated the due process provision of the Fourteenth Amendment.

As long as the official's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," he or she has qualified immunity from civil liability under § 1983.  <u>Spoklie</u>, 411 F.3d at 1060.  In analyzing the qualified immunity defense, the court must determine: "(1) what right has been violated; (2) whether that right was so 'clearly established' at the time of the incident that a reasonable officer would have been aware of its constitutionality; and (3) whether a reasonable public officer could have believed that the alleged conduct was lawful."  <u>Jensen v. City of Oxnard</u>, 145 F.3d 1078, 1085 (9th Cir. 1998), <u>cert. denied</u>, 525 U.S. 1016 (1998).

While the Court previously determined that Plaintiff alleges the violation of clearly established constitutional interests here, the same cannot be said of Plaintiff's argument that Defendants should have known that their application of Hawaii's sentencing law was constitutionally infirm.  Based on the record before the Court, the practice of interpreting an inmate's sentence to run either concurrently or consecutively appears to have been anything but clearly established within the relevant branches of State government.  Instead, it appears to have been a practice very much in flux.  In purportedly changing to a strict interpretation of HRS § 706-668.5(1), Defendants did not have cause to reasonably believe that such action would lead to the violation of any "clearly established" rights on the part of Plaintiff or others.  Indeed, Defendants were merely correcting a previously improper practice and this Court finds that it would be beyond the scope of qualified immunity legal precedent and would work an inequity on Defendants to punish them for doing so.

Furthermore, the question of whether a reasonable officer could have believed that the alleged conduct was lawful is augmented by case law specific to over-detention cases.  As discussed previously, detention beyond the termination of a sentence can constitute cruel and unusual punishment if it is the result of deliberate indifference to a prisoner's liberty interest.  Haygood, 769 F.2d at 1354.

16

To review, in <u>Haygood</u>, a former prisoner brought an action against various state officials based on being over-detained for approximately five years, the last 17 months during which he protested his incarceration.  Haygood was serving two prison terms and he quarreled with prison officials as to whether they should be served consecutively or concurrently.  The officials took the position that his term for escape should not begin until he had completed his robbery term, but the California Supreme Court later held that this determination was incorrect.  The court held that there was adequate evidence to conclude that the defendants violated the Eighth Amendment since, after being put on notice, they simply refused to investigate the prisoner's claims of a computational error regarding his release date.  <u>Id.</u> at 1355.

Here, there is nothing approaching the misconduct of <u>Haygood</u> and, thus, qualified immunity shields Defendants from Plaintiff's § 1983 claims.  First, the initial error was apparently made not by Defendants but by the State court, which failed to check either of the available boxes specifying how Plaintiff's sentences should run.  It is well established that judges are generally immune from civil liability under § 1983, even when acting erroneously, <u>Meek v. County of Riverside</u>, 183 F.3d 962, 965 (9th Cir. 1999), which is, presumably, why Judge Alm is not named as a defendant here.  It would be an inequitable and absurd result

17

to strip Defendants of their qualified immunity based on an error committed by another party, which was followed by Defendants' accurate interpretation and application of HRS § 706-668.5(1) with respect to Plaintiff.

Second, when Defendants became aware of Plaintiff's possible over-detention, they undertook an immediate, thorough, and eventually fruitful investigation of Plaintiff's complaints, leading to Plaintiff's release only 27 days after his initially scheduled release date.  Simply put, this is not deliberate indifference like that found in <u>Haygood</u>, where the defendants simply refused – for over seventeen months – to investigate the plaintiff's claim of over-detention.  Had Plaintiff provided this Court with cognizable evidence of a failure or significant delay in investigating his complaints, the Court's calculus would undoubtedly be different.  The rapid and attentive response on the part of Defendants, however, leads to the conclusion that Defendants actions here fall well short of being deliberately indifferent.

Third, Defendants cannot be said to have acted with deliberate indifference sufficient to constitute an abrogation of qualified immunity when they were merely interpreting and applying validly-enacted State law, namely HRS § 706-668.5(1).  The plain language of this statute is clear – multiple terms of imprisonment imposed at different times run consecutively unless the court orders

18

otherwise.  From the records reviewed by Simmons, there was no explicit

indication that the court intended a concurrent sentence for Plaintiff.   Moreover,

the Court finds Plaintiff's contention that Simmons should have realized while

performing the OMRA that Plaintiff's release to Victory Ohana meant that he must

have served at least some of his sentence for the misdemeanor 2002 conviction

unpersuasive.  To reiterate, Simmons accurately applied HRS § 706-668.5(1) in

reviewing Plaintiff's sentence and had no reason to interpret Plaintiff's sentence in

a manner different from what the law dictated.

Similar reasoning applies to Defendants' claim of qualified immunity

for Plaintiff's due process claim under the Fourteenth Amendment.  "[D]ue process

requires the state to provide a hearing before a further denial of liberty can be said

to be free from § 1983 liability."  Id. at 1359.  A liberty interest protected by the

Due Process Clause may arise from two sources: 1) the Due Process Clause itself

and 2) state statutes or regulations.  Meachum v. Fano, 427 U.S. 215, 223-27

(1976).  The Due Process Clause creates a liberty interest that prohibits certain

severe changes in the conditions of an inmate's confinement, regardless of whether

the changes are authorized by state law.  See Vitek v. Jones, 445 U.S. 480, 494

(1980) (holding involuntary transfer to mental hospital violates Due Process

19

Clause); <u>Washington v. Harper</u>, 494 U.S. 210, 221-22 (1990) (holding involuntary administration of anti-psychotic drugs violates Due Process Clause).

As discussed above, although the Fourteenth Amendment does not guarantee state prisoners a particular method of calculating prison sentences, where the state creates a statutory right to release from prison, it "also creates a liberty interest and must follow minimum due process appropriate to the circumstances to ensure that liberty is not arbitrarily abrogated."  <u>Haygood</u>, 769 F.2d at 1355.

> [i]f the wrongful taking of liberty results from either affirmatively enacted or de facto policies, practices or customs, the court must determine when the responsible state officers received notice of a claim that a wrong was being done.  When an official with the authority to rectify an erroneous practice receives notice of the wrongful practice and its harmful consequences, due process requires the state to provide a hearing before a further denial of liberty can be said to be free from § 1983 liability.

<u>Id.</u> at 1359.

In this matter, there was no wrongful taking of Plaintiff's liberty resulting from any affirmatively enacted or de facto policy or practice of Defendants.  Rather, Plaintiff's detention for an additional 27 days resulted primarily from an error on the part of the sentencing court, an action that was, in hindsight, exacerbated by the proper application of Hawai`i sentencing law.

Moreover, even if Defendants actions with respect to Plaintiff could be construed as improper, Defendants cannot be said to have deprived Plaintiff of his due process rights in light of the fact that they immediately investigated his complaints, followed up with the sentencing court, and obtained a favorable result on his behalf.  While no hearing was provided, this is because no hearing was required. Plaintiff was afforded the very thing that any hearing would have addressed – his release from prison.  Defendants' actions here did not violate Plaintiff's Fourteenth Amendment rights.

As the Court indicated at the hearing, this matter presents a difficult set of circumstances.  The Court does not take lightly the deprivation of liberty, no matter how short, and finds the events that befell Plaintiff unfortunate.  As stated at the hearing, there is a strong probability that there was some negligence here. However, mere negligence does not obviate qualified immunity, specifically with regard to allegations of due process violations.  See generally Daniels v. Williams, 474 U.S. 327 (1986).  In applying the law to the facts at hand, the Court finds that there is simply not enough probative evidence here to create a genuine issue of material fact sufficient to defeat Defendants' qualified immunity.

The Court therefore GRANTS Defendants' Motion with respect to this issue.

21

III.  <u>Supplemental Jurisdiction</u>

Defendants urge this Court to decline supplemental jurisdiction because summary judgment on Plaintiff's federal claims is appropriate.  The Supreme Court has stated that a federal court has jurisdiction over an entire action, including state law claims, whenever the federal law claims and state law claims in the case derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them all in one judicial proceeding. <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715 (1966).  A district court may decline to exercise supplemental jurisdiction, however, if the court has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3).

Because this Court has determined that Plaintiff cannot overcome Defendants' qualified immunity and, as a result, summary judgment is appropriate on Plaintiff's § 1983 claims, there is no claim remaining over which this Court has original jurisdiction.  Thus, the Court declines to exert supplemental jurisdiction over Plaintiff's State law claims.  Plaintiff may pursue his claims in State court.

CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' Motion for Summary Judgment.  Judgment shall be issued accordingly.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, August 14, 2008.

_____
David Alan Ezra
United States District Judge

Temblor v. Lopez, et al., CV No. 07-00429 DAE-BMK; ORDER GRANTING DEFENDANTS THOMAS READ AND NETTIE SIMMONS' MOTION FOR SUMMARY JUDGMENT